Filed 10/22/25  P. v. Bennett CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE, | C101597 |
| Plaintiff and Respondent, | (Super. Ct. Nos. CR2021-2111, CR2023-0488, CR2024-1951) |
| v. | |
| DAVID H. BENNETT, | |
| Defendant and Appellant. | |

After finding defendant David H. Bennett incompetent to stand trial, the trial court issued a commitment order, which included the authorization of involuntary administration of antipsychotic medication to Bennett.  Bennett appeals this order, contending that the trial court failed to make required statutory findings on the record and that the authorization to involuntarily medicate him was not supported by substantial evidence.

The order authorizing involuntary medication expired during the pendency of this appeal.  The expiration of the order renders this appeal moot, and we therefore dismiss it.

1

## BACKGROUND

Between 2021 and 2024, Bennett committed a variety of crimes, which resulted in charges in three separate cases.[1]  On May 7, 2024, defense counsel and the trial court declared a doubt as to Bennett's competency.  The trial court suspended proceedings under Penal Code[2] section 1368 and appointed a doctor to evaluate Bennett's competency to stand trial.

Dr. Sirintip Rhee prepared a section 1368 competency evaluation on June 1, 2024.[3]  On June 4, 2024, after considering Dr. Rhee's evaluation, the trial court found that Bennett was incompetent to stand trial under section 1368 for all three of his pending cases.  The trial court referred the case to the community program director to prepare a report and recommendation concerning Bennett's placement and treatment.

A preplacement report was prepared on June 17, 2024, which recommended that Bennett be "referred to an appropriate forensic setting, as determined by the California Department of State Hospital's continuum of care."  In the recommendation, the community program director instructed the trial court to indicate in its order whether involuntary antipsychotic medication was necessary or whether Bennett could choose to accept or refuse medication as part of his treatment.[4]

---

[1]    The facts underlying Bennett's charges are not relevant to any issue raised on appeal and are therefore not recounted.

[2]    Undesignated statutory references are to the Penal Code.

[3]    Dr. Rhee's name appears to be mistakenly transcribed in the reporter's transcript as "Dr. Reed."  There is no report from a "Dr. Reed" in the record.

[4]    The People refer to and rely upon three other reports in their brief including a February 28, 2023, competency report from Dr. Alvis, a March 9, 2023, conditional release preplacement report, and a November 16, 2023, competency report from the Department of State Hospitals, as well as a March 16, 2023, commitment order.  It does not appear that the court considered these documents at the June 4, 2024, competency

On June 21, 2024, in an "Order of Commitment After Findings of Mental Incompetence" (the commitment order) the trial court ordered Bennett to be committed to a state hospital and/or jail-based competency program for a maximum of two years. The commitment order contained several component parts, including a section called "Involuntary Medication Order." In this section, as required by section 1370, subdivision (a)(2)(B)(ii), the trial court indicated by checking a box that it found "defendant lacks capacity to make decisions regarding antipsychotic medication, the defendant's mental disorder requires medical treatment with antipsychotic medication, and, if the defendant's mental disorder is not treated with antipsychotic medication, it is probable that serious harm to the physical or mental health of the patient will result."

Immediately following the Involuntary Medication Order is a list of more specific orders made for "[g]ood cause appearing." These orders include two parts that are at issue in this case, which we collectively call the "medication order." The first part of the medication order states, "that the involuntary administration of antipsychotic medication to the defendant as prescribed by the defendant's treating psychiatrist at any facility housing the defendant is hereby authorized. The order shall be valid for no more than one year from the date of this order." In the next paragraph, the second part of the medication order states, "In compliance with this Order, the defendant may be involuntarily medicated at the jail under the supervision of a jail psychiatrist or jail physician, while awaiting placement in a treatment facility and upon return from a treatment facility until the defendant is found competent by the court."

Bennett timely appealed from this order.

---

hearing or on June 21, 2024, when the trial court made the commitment order. We therefore do not recount them.

3

# DISCUSSION

## *Mootness*

The first part of the trial court's June 21, 2024, medication order expressly states that it "shall be valid for no more than one year from the date of this order." We requested supplemental briefing on whether, in light of the apparent expiration of the one-year term of the challenged order, the appeal challenging the June 21, 2024, order for the involuntary administration of antipsychotic medication had become moot.

Bennett contends that the appeal has not become moot because the expiration date does not apply to the second part of the medication order that authorizes the jails to involuntarily medicate him while he awaits transport to and from a treatment facility "without end." In the alternative, Bennett asks this court to exercise its discretion to consider the moot issue because it is a matter of broad public interest that is capable of recurring but evades review.

The People contend that the claim is moot in light of the expiration of the one-year term and is not an issue of public interest or one likely to recur and evade review. We agree with the People.

First, we disagree with Bennett's interpretation of the medication order. According to Bennett, the two parts of the medication order should be read as distinct orders; the first, which authorizes a competency program in a treatment facility to involuntarily medicate Bennett for no more than one year, and the second, which separately authorizes county jails to involuntarily medicate Bennett while he awaits transport to and from the treatment facility "without end." Based on this interpretation, Bennett concludes that jails are authorized to involuntarily medicate him while he is there at any point during the two-year maximum timeframe that he is committed to a state hospital and/or a jail-based competency program, regardless of whether the first part of the medication order has expired. This interpretation does not comport with the plain language of the medication order or the relevant statute.

4

" '[T]he meaning and effect of a judgment is determined according to the rules governing the interpretation of writings generally.' [Citation.] We conclude the same rules apply to the interpretation of a written order issued by a trial court. Under those rules, the entire order is taken by its four corners and construed as a whole. [Citation.] Also, the order's language is viewed in light of the facts and the issues before the court, and each statement is considered in its proper context." (*Smith v. Ogbuehi* (2019) 38 Cal.App.5th 453, 474-475.)

Construing the medication order as a whole and in light of the facts and issues before the court, we determine that the one-year expiration date applies to all parts of the involuntary medication order including when Bennett is at a treatment facility and when he is temporarily located in jail awaiting transport to or from the treatment facility.

This interpretation is consistent with the plain language in the order. The first part of the medication order that authorizes involuntary medication at a treatment facility expressly states that "[t]he order shall be valid for no more than one year from the date of this order." There is no language in this first part of the medication order that indicates the expiration date is limited to when Bennett is in a treatment facility.

The immediately following second part of the medication order authorizes a jail to involuntarily medicate Bennett while he awaits placement in a treatment facility and upon return from a treatment facility "[i]n compliance with this Order." This language indicates that the second part of the order must also comply with the rest of the order, including the one-year expiration date.

Reading these two parts of the medication order as a whole, as we must, it is clear that the order authorizes the involuntary medication of Bennett for up to one year regardless of where he is housed during that time.

This interpretation of the order also comports with the plain language of the statute in section 1370, subdivision (a)(7)(A), which states that "[a]n order by the court authorizing involuntary medication of the defendant shall be valid for no more than one

year." Like the language in the medication order, the statute does not differentiate between a defendant's housing for purposes of the expiration date of the medication order. We see no reason to depart from the plain language of the statute.

Nor are we persuaded by Bennett's alternative argument that this case should not be dismissed as moot because it is one of broad public interest that is capable of recurring by evading review. The issue raised by Bennett here—that there is insufficient evidence to support the trial court's medication order—is not one of broad public interest. (*People v. McCray* (2023) 98 Cal.App.5th 260, 267-268 [finding that claims of insufficient evidence are fact-specific issues that are not areas of continuing public importance].)

Nor is Bennett's insufficiency claim capable of recurring or evading review. The governing statute mandates that an involuntary medication order becomes invalid after one year. (§ 1370, subd. (a)(7)(A).) The plain language of the medication order echoes this rule. As we have determined, the medication order has expired. Bennett has not provided any argument about how any purported lack of evidence in the record to support the expired medication order here is capable of recurring.

### DISPOSITION

The appeal is dismissed as moot.

/s/<br>
EARL, P. J.

We concur:

/s/
MAURO, J.

/s/
DUARTE, J.